UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-244-GWU

BILLY STEELE, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Billy Steele brought this action to obtain judicial review of an unfavorable administrative decision on his application for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

                in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984); <u>Walters v. Commissioner of Social Security</u>, 127 F.3d 525, 531 (6th Cir. 1997).

    Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that Steele, a 54-year-old former logger with a high school education, suffered from impairments related to low back and neck pain due to degenerative disc disease of the cervical and lumbar spine, umbilical, inguinal and hiatal hernias, and gallbladder problems. (Tr. 12, 16). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 14, 16).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 16-17).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 17).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert James Miller included an exertional limitation to light level work, restricted from a full range by such non-exertional restrictions as an inability to more than frequently climb,

balance, stoop, kneel, crouch or crawl and an inability to ever climb ladders, ropes or scaffolds. (Tr. 39-40). In response, Miller identified a significant number of jobs which could still be performed in the national economy. (Tr. 40). Therefore, assuming that the vocational factors considered by the expert fairly characterized Steele's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The hypothetical question fairly depicted Steele's condition as required by Varley. Dr. Ahmed Abdel-Latif examined Steele and diagnosed umbilical, inguinal and hiatal hernias, lower back pain without significant neurological findings, left knee pain secondary to osteoarthritis and possible cervical spine arthritis. (Tr. 161). Dr. Abdel-Latif opined that the hernias were the plaintiff's main problem. (Id.). However, these were described as uncomplicated and not associated with significant symptoms which would limit his ability to perform work activity. (Id.). He advised the claimant to avoid work requiring heavy lifting and strenuous physical activity. (Tr. 162). Steele's problems with his left knee and cervical spine were not thought to impose significant functional restrictions. (Id.). The ALJ's findings were compatible with this opinion.

Dr. Robert Brown reviewed the record in May of 2007. (Tr. 233-240). Dr. Brown opined that Steele retained the ability to lift a maximum of 20 pounds occasionally and 10 pounds on a frequent basis. (Tr. 234). The plaintiff would be

able to "frequently" climb ramps and stairs, balance, stoop, kneel, crouch or crawl. (Tr. 235). Dr. Brown indicated that the claimant would be precluded from ever climbing ladders, ropes or scaffolds. (Id.). These factors were presented to the vocational expert.

Dr. Samir Cook, a treating source, opined that Steele did not appear to be capable of lifting, bending or other activities on a regular basis in a January, 2008 letter. (Tr. 248). The ALJ rejected this opinion because it was not supported by objective medical data. (Tr. 16). The only piece of objective medical data cited by Dr. Cook was an MRI scan revealing only mild abnormalities. (Tr. 16, 248). Furthermore, Dr. Cook noted that he had been asked to complete a functional capacity assessment form. (Tr. 248). However, the physician reported that the form did not apply to the complaints he, as an expert in gastroenterology, had treated the patient for during his office visits. (Id.). Dr. Cook indicated that degenerative changes in the back were the primary problem restricting the claimant. (Id.). The doctor reported that Dr. Christine Foster had been the physician who treated Steele for these problems. (Id.). Therefore, Dr. Cook's opinion does not appear well-supported and the ALJ properly rejected it as binding.

Dr. Foster did not identify the existence of specific physical restrictions but did opine that she believed Steele qualified for disability. (Tr. 231). The administrative regulations provide that this is an issue reserved to the Commissioner

and, so, was not binding on the ALJ. 20 C.F.R. § 416.927(e)(1). As previously noted, Dr. Foster relied heavily upon an MRI scan of the lumbar spine which revealed only "mild" discogenic and degenerative changes at L2-L3. (Tr. 183). Therefore, this opinion was also properly rejected by the ALJ.

Steele argues that the ALJ erred in finding that his testimony concerning his complaints was not credible. (Tr. 15). However, the ALJ cited a number of reasons for this finding. The ALJ indicated that physical examinations had not revealed significant impairment of the cervical or lumbar spines. (Id.). The court notes Dr. Abdel-Latif reported normal range of motion in the cervical and lumbar spines upon physical examination. (Tr. 161). The plaintiff's treatment was noted to have been conservative and not requiring emergency care, physical therapy, injective therapy, or the utilization of a pain control device. (Tr. 15). Significantly, Dr. Foster terminated the claimant from treatment due to his non-compliance with narcotic medication. (Tr. 15, 229). Testing revealed that the plaintiff was negative for oxycodone despite his claims of having taken the medication in the days before and of the test. (Tr. 31, 230). Therefore, the court finds that the ALJ dealt properly with the issue of the claimant's credibility.

Steele also asserts that the ALJ erred by failing to consider his impairments in combination. However, the ALJ reviewed the plaintiff's impairments, including those related to gastrointestinal problems and his musculoskeletal system, and

specifically stated he was considering the claimant's impairments in combination. (Tr. 12-14). The undersigned has already determined that the hypothetical question fairly depicted Steele's condition. Thus, the ALJ implicitly considered the plaintiff's impairments in proper combination. Therefore, the court must reject the claimant's argument.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 20th day of April, 2010.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**